**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-1220**

───────────────

THUY-AI NGUYEN,

　　　　　　　Plaintiff − Appellant,

　　　　v.

SCOTT BESSENT, Secretary of the Treasury,

　　　　　　　Defendant – Appellee.

───────────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paula Xinis, District Judge. (8:18−cv−00492−PX)

───────────────

Submitted: May 17, 2024　　　　　　　　　　Decided: February 14, 2025

───────────────

Before DIAZ, Chief Judge, and KING and THACKER, Circuit Judges.

───────────────

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge King and Judge Thacker joined.

───────────────

**ON BRIEF:** Denise M. Clark, CLARK LAW GROUP, PLLC, Washington, D.C., for Appellant. Erek L. Barron, United States Attorney, Sarah A. Marquardt, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

Thuy-Ai Nguyen claims that her employer, the Internal Revenue Service, discriminated against her based on age, race, national origin, and sex by reassigning and disciplining her, in violation of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act. She also alleges that her employer didn't offer her a reasonable accommodation and did not engage in an interactive process in good faith after she became disabled, violating the Rehabilitation Act.

After considering the administrative record, the district court granted summary judgment for the Department of the Treasury (of which the IRS is a bureau) on all claims except the one alleging a violation of the Rehabilitation Act. And after allowing discovery into the remaining claim, it again granted summary judgment for the Treasury.

We affirm.


I.

Because this appeal comes to us after a grant of summary judgment for the Treasury, we construe the evidence in the light most favorable to Nguyen and draw all reasonable inferences in her favor. *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 691 (4th Cir. 2009).

A.

Nguyen is an Asian woman, born in Vietnam, who was over forty years old at all times relevant to this lawsuit. Starting in 2006, she worked as an IT specialist in the Tax-Exempt Government Entity Section at the IRS's New Carrollton office in Lanham,

2

Maryland. Although she had a different primary assignment, she sometimes helped with the Section's Tax-Exempt Government Entity Ruling and Agreements Control Systems project beginning around 2011.

The controls systems project used software with which Nguyen was unfamiliar. Nguyen asked for more training when given project assignments. But she received none because of a lack of funding.

In May 2013, Linda Whiting became Nguyen's first-level manager. She made the control systems project Nguyen's full-time assignment. Whiting tasked Nguyen with improving the project and, specifically, with making it accessible to those with disabilities.

Nguyen felt unprepared for this change in her responsibilities. Her only training on the project's software consisted of an introductory class, which was available for all employees who worked on the project. She repeatedly requested more training, but each time she asked the Treasury told her none was available. Other employees taught themselves the software. But Nguyen alone maintained that she couldn't do her job without additional formal training.

Nguyen struggled. She often failed to complete tasks assigned to her. A midyear review, issued by Whiting, gave her failing grades in eleven of fifteen categories. Nguyen claimed Whiting was generally rude and abusive to her while Whiting and other employees claimed Nguyen was combative and disrupted meetings.

Events came to a head on July 2, 2014. Whiting met with Nguyen and Cindy McGregor, the project's team lead, to create "a one year transition plan for [Nguyen] to get

more familiar with [the project]" in anticipation of McGregor's upcoming retirement. J.A. 143.

Nguyen claims Whiting and McGregor were unprepared to provide her with a transition plan and refused to give her necessary information. By Whiting and McGregor's telling, however, Nguyen derailed the meeting by complaining about her lack of training.

Later that day, Nguyen and Whiting met a second time, this time joined by Norman Keith, Nguyen's second-level manager. Once again, Nguyen asked for more training, only for Keith to tell her that she had received all the training the Treasury could offer. At the end of the meeting, Keith "bang[ed]" his fist on his desk and told Nguyen that the meeting was over. J.A. 318.

Whiting and Keith proposed disciplinary action against Nguyen based on her conduct at the two meetings. The basis for the discipline was "discourtesy or unprofessional behavior," "failure to follow management directives or instructions," and "insubordination." J.A. 427. This resulted in a one-day suspension, which Nguyen learned of on July 11, 2014, and served on November 24, 2014. Nguyen's third-level manager, Linda Gilpin, approved the suspension.

Nguyen contacted the Treasury's Equal Employment Opportunity office shortly after the July meetings. That office investigated whether Nguyen had suffered harassment, discrimination, or retaliation based on her protected status or conduct. The office issued a final decision in November 2017, rejecting Nguyen's claims.

4

B.

After the events of July 2014, Nguyen sought medical treatment for anxiety and depression related to her work. She was temporarily admitted for inpatient psychiatric care in August. Nguyen stopped coming to work in late October or early November and has been on "leave without pay" since. J.A. 2056.

Nguyen requested a disability accommodation in June 2015. With supporting medical documentation, she claimed that she suffered from "severe depression, anxiety, and cognitive impairment." J.A. 253. She requested (1) transfer "to a new project and new division under new supervision, which is supportive and nurturing"; (2) training; (3) part-time work; and (4) "flexiplace."[1] J.A. 252. Her psychiatrist opined that her situation would deteriorate "if she is not relocated to a different department/project with new supervisors." J.A. 2266.

In response, the Treasury offered to assign Nguyen to a new project with a new supervisor. It also offered on the job training and a part-time schedule for the first six months. It denied telework over that period because training required "face to face interaction," but it offered to revisit the request for telework after the six-month training period ended. J.A. 2267.

Nguyen rejected the offer because Gilpin would remain her third-level manager and she would have to commute to the same New Carrollton office for the first six months.

---

[1] "'Flexiplace' is the name of the IRS program that allows employees to work from home." *Hart v. Lew*, 973 F. Supp. 2d 561, 569 n.8 (D. Md. 2013).

5

At that point the Treasury's accommodations coordinator, Cynthia Washington, analyzed Nguyen's skills and preferences (including her lowest acceptable pay grade) and found roles for which she qualified. Washington then ran searches for vacant positions and informed Nguyen of the results "on a weekly basis." J.A. 2287. Despite searching for a year, no suitable positions came up.

In April 2017, Washington told Nguyen that the next step was to conduct a Treasury-wide search. Washington and Nguyen communicated to update Nguyen's preferences.

Later that month, the Treasury offered a second set of accommodations: an IT Specialist position, which involved (1) a different department and new project, and (2) new management at all levels. But the position was full-time and at the same physical location. So Nguyen rejected the offer. No other positions opened in the next few months, and the Treasury formally denied her request in August.

### C.

Nguyen sued, alleging that her reassignment to the control systems project and her suspension were due to her race, sex, national origin, and age. She also claimed the Treasury didn't offer her a reasonable accommodation for her disability under the Rehabilitation Act.[2] The district court first granted summary judgment for the Treasury on

---

[2] Nguyen brought additional claims, which she either withdrew or doesn't raise on appeal.

6

all Nguyen's claims except for the one alleging the violation of the Rehabilitation Act.[3] *Nguyen v. Mnuchin*, No. 8:18-cv-00492-PX, 2019 WL 2270690 (D. Md. May 28, 2019).

As for Nguyen's initial change in duties, the district court held that she did not timely exhaust her administrative remedies. *Id.* at *6. And it explained that Nguyen couldn't show she was disciplined more harshly than any employee engaged in similar misconduct. *Id.* at *7–8.

But the district court denied the Treasury's motion as to Nguyen's Rehabilitation Act claim and allowed discovery into whether the Treasury had vacant positions Nguyen could fill and whether the proposed accommodations were reasonable. *Id.* at *12. Later, the court granted summary judgment on that claim too, holding that the Treasury engaged in the interactive process in good faith and that its first offer constituted a reasonable accommodation. *Nguyen v. Yellen*, No. 8:18-cv-00492-PX, 2023 WL 1442436 (D. Md. Feb. 1, 2023).

This appeal followed.

## II.

We review the district court's summary judgment rulings de novo, viewing all facts and reasonable inferences in the light most favorable to Nguyen. *Wai Man Tom v. Hosp.*

---

[3] The district court construed the Treasury's motion as one for summary judgment based on the Equal Employment Opportunity office's accumulation of an extensive record while investigating Nguyen's case and after allowing both sides the opportunity to present pertinent material from that investigation. *Nguyen v. Mnuchin*, No. 8:18-cv-00492-PX, 2019 WL 2270690, at *5 (D. Md. May 28, 2019).

7

*Ventures LLC*, 980 F.3d 1027, 1036 (4th Cir. 2020).  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To survive summary judgment, Nguyen must point to "'evidence on which the jury could reasonably find for' her."  *Noonan v. Consol. Shoe Co.*, 84 F.4th 566, 572 (4th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

III.

Nguyen raises three issues on appeal.  First, she challenges the district court's determination that she had failed to exhaust her administrative remedies on her claim that her reassignment was discriminatory.  Second, she contends that the district court erred by holding she had failed to show she experienced harsher discipline than other employees due to her race, age, sex, and national origin.  Finally, she claims the Treasury did not offer her a reasonable accommodation and refused to engage in an interactive process to find one.

We affirm.

A.

Before suing under Title VII, a federal employee must contact an Equal Employment Opportunity Counselor within forty-five days of the alleged act of discrimination.  29 C.F.R. § 1614.105(a)(1).  Under the Age Discrimination in Employment Act, a federal employee has two options.  They may initiate the same proceedings as under Title VII.  *Id.*  Alternatively, they may sue in federal court if they

provide thirty days' notice of an intent to file an action and provide that notice within 180 days of the allegedly discriminatory practice.  29 U.S.C. § 633a(d); *Stevens v. Dep't of Treasury*, 500 U.S. 1, 6 (1991).  Failure to exhaust administrative remedies generally bars an employee from pursuing a particular claim.  *Chacko v. Patuxent Inst.*, 429 F.3d 505, 513 (4th Cir. 2005).

Whiting reassigned Nguyen on May 2, 2013.  To timely exhaust her administrative remedies under Title VII she needed to contact the Commission by June 17.[4]  Alternatively, she could have satisfied her Age Discrimination in Employment Act exhaustion requirement by filing a notice of intent to sue by October 29.  But she first contacted a counselor on July 16, 2014.  So her claims are untimely as to her reassignment.

On appeal Nguyen argues the clock started running on July 2, 2014 (after her meeting with Keith and Whiting), not on May 2, 2013 (the date of her reassignment).  In her view, it's the date a plaintiff first *suspected* an act was discriminatory that matters, not the date of the act.  And she claims she had no reason to believe her reassignment was discriminatory until that meeting.  Appellant's Br. at 12.

We disagree.  Our cases are clear that "it is notice of the employer's actions, *not* the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing period." *Hamilton v. 1st Source Bank*, 928 F.2d 86, 89 (4th Cir. 1990) (en

---

[4] June 16, 2013, was a Sunday.

9

banc) (analyzing the ADEA time requirement); *see also Guerrero v. Lynch*, 621 F. App'x 755, 756 (4th Cir. 2015) (per curiam) (same under Title VII). [5]

The district court correctly held that Nguyen didn't timely exhaust her administrative remedies for her theory that her 2013 reassignment was motivated by animus based on race, national origin, sex, or age.

## B.

Nguyen also appeals the district court's dismissal of her discriminatory discipline claim.  To prevail on that claim, a member of a protected class must show that another employee, who isn't a member of the same class, engaged in similar conduct and was disciplined less severely.  *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). "The similarity between comparators and the seriousness of their respective offenses must be clearly established to be meaningful."  *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

Nguyen proffers Santiago Lopez, a Hispanic man, as a comparator.  The record reflects that Lopez, like Nguyen, reported to Whiting and Keith.  As for similar conduct,

---

[5] Nguyen also argues that her claim should be equitably tolled.  And she argues that because the Equal Employment Opportunity office decided her case on the merits without addressing timeliness, the government shouldn't be able to raise the exhaustion requirement here.  But she raises these arguments for the first time in her reply brief and didn't present them to the district court.  We've repeatedly explained that "[g]enerally, parties may not raise new arguments on appeal that were not first presented to the district court."  *Richardson v. Clarke*, 52 F.4th 614, 625 (4th Cir. 2022).  Likewise, we typically consider arguments not raised in an opening brief waived, even if included in a reply. *Suarez-Valenzuela v. Holder*, 714 F.3d 241, 249 (4th Cir. 2013).  So we decline to address these doubly inappropriate arguments.

Lopez described a single incident in May 2014 where he disputed having to perform a software test because of constrained resources, but Whiting overruled him. And Lopez explained that Whiting delegated tasks, like leading meetings, that he refused to do because they were outside his job responsibilities.

That isn't comparable to Nguyen's conduct. Nguyen's constant demands for more training adversely impacted her job performance. The record reflects that Nguyen "[was] frequently combative and refused assistance and advice," "frequently caused workgroup interruptions," "[came] to meetings unprepared and expect[ing] [others] to do [her] work," "refused the assistance that was offered" and "continually maintain[ed] that [she had] no [project] training or knowledge." J.A. 150.

Nguyen doesn't meaningfully dispute that she, unlike her fellow employees who taught themselves the material, continued to ask for more training—despite knowing that none was available—and therefore didn't complete her tasks. J.A. 312 ("I just could not do my work because I was not trained on and did not have the information for my assignments."). And although the extent of Nguyen's *combativeness* during the meetings that led to her suspension is disputed, what isn't disputed is that she was *disruptive* by continuing to complain about the lack of training when that wasn't the purpose of either meeting.

An employee (like Lopez) with a single instance of untimely work product who declined to perform a task outside their job description is not similarly situated to one who consistently refused to do their job. We agree with the district court that Nguyen hasn't

11

mustered a genuine dispute of a material fact that the Treasury disciplined her in a discriminatory fashion.

C.

We turn last to Nguyen's claim under the Rehabilitation Act that the Treasury did not offer her a reasonable accommodation. The Act prohibits federal agencies from discriminating against employees based on disability. 29 U.S.C. § 794(a). To establish a prima facie case, Nguyen must show (1) that she is an individual with a disability, (2) that the Treasury had notice of her disability, (3) that she could perform the essential functions of her job if provided a reasonable accommodation, and (4) that the Treasury didn't offer her a reasonable accommodation. *Reyazuddin v. Montgomery County*, 789 F.3d 407, 414 (4th Cir. 2015). The district court concluded that Nguyen couldn't prove the fourth element, and only that element is disputed here.

Nguyen requested these accommodations: (1) transfer "to a new project and new division under new supervision, which is supportive and nurturing"; (2) training; (3) part-time work; and (4) "flexiplace." J.A. 252. She also singled out Whiting, Keith, and Gilpin (her first, second, and third-level supervisors) as people she couldn't work under.[6] J.A. 252. And in her request, her doctor stated that she couldn't "function under current position & under current supervisors." J.A. 254.

---

[6] Nguyen's primary argument before the district court was that the proposed accommodation was ineffective because Gilpin remained her third-level supervisor. She doesn't make that argument on appeal.

12

The Treasury offered assignment to a new project in a different division with a new supervisor. It offered on-the-job training for the new position for several months. And it offered part-time work of ten hours a week for the first month and twenty hours a week for the next five months. True, it denied telework for those six months because the training needed to be in person. Yet it explicitly stated it would reconsider the request for telework after the training period expired.

Later, the Treasury clarified that although Nguyen would still be in the Tax Exempt Government Entity Systems branch, she would have different first- and second-level supervisors. And it explained that she needed to do her work in the New Carrollton office because the work she'd perform occurred only in that office.

We agree with the district court that no rational factfinder could find this offer unreasonable. We've noted that "[a]n employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested." *Reyazuddin*, 789 F.3d at 415. The Treasury's offer addressed Nguyen's concerns. It moved her away from the project and the supervisors who triggered her psychiatric symptoms, and it offered her training and a part-time schedule while leaving open the possibility of eventual telework.

Nguyen argues that the offer was ambiguous. We struggle to understand how this is so. We interpret Nguyen's argument to fault the district court for not considering that she'd remain in the same division. But any error is harmless because the Treasury's accommodation was nevertheless reasonable.

13

Nguyen's doctor asked that she "be transferred to another position with different supervisors and coworkers," J.A. 2262, and explained that "[t]ransferring [Nguyen] to new supervision will remove the employee's stressor of interactions with her previous managers." J.A. 2323. Although Nguyen's medical documentation referenced transfer to a new division, it didn't describe transfer as a medical necessity for her to continue working. *See Smith v. CSRA*, 12 F.4th 396, 415 (4th Cir. 2021) (rejecting plaintiff's failure to accommodate claim where medical documentation "did not specifically state that such an accommodation was required.").

Nguyen also disputes the in-person training requirement. In her view, the Treasury's offer denied her telework and denied her request for a shorter commute. So the Treasury's offer wasn't reasonable. We disagree.

Physical presence can be an essential function of a job if it is "job-related, uniformly enforced, or consistent with business necessity." *Brown v. Austin*, 13 F.4th 1079, 1086 (10th Cir. 2021) (cleaned up). The in-person requirement was to train Nguyen in her new role, leaving open the possibility of teleworking afterward.

Before the COVID-19 pandemic, "training for new roles [at the IRS] occurred in-person, regardless of whether the employee was starting in their first role with IRS or whether it was an IRS employee transferring to a new project or division." J.A. 2035. Even now, the IRS considers "in-person, face-to-face training [to be] the best, preferred, and most effective form of training." J.A. 2035.

The importance of in-person training here is especially notable given Nguyen's history of demanding formal training. Nguyen's subjective belief that she could be trained

14

remotely cannot create a genuine dispute given uncontroverted evidence that her employer required all training for reassigned employees to be in person. *See Brown*, 13 F.4th at 1086 ("[Plaintiff's] own belief that [s]he could perform the essential functions of [her] job from home is not enough.").

Nguyen's telework argument fails for another reason. Her doctor stated that Nguyen needed to be in a low-stress environment. He advised that this could be achieved by (1) transferring Nguyen to a new position with different supervisors, or (2) allowing her to telework or shortening her commute. J.A. 2262.

We've held that without medical documentation specifically stating remote work was required, an alternative accommodation was reasonable. *Smith*, 12 F.4th at 415. And an employer "has the ultimate discretion to choose between effective accommodations." *Reyazuddin*, 789 F.3d at 415–16 (quoting *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996)). Because the Treasury chose one reasonable accommodation (assignment to a new project under new supervision), it isn't liable for not offering an alternative accommodation.

We reach the same result regarding commuting. Nguyen proposed a shorter commute to a different location as an alternative accommodation. The Treasury can't be faulted for offering a new position instead. The record reflects that the Treasury searched diligently for over a year for a position that met all Nguyen's requests, including a shorter commute, only to come up empty. When no vacancies exist for which the employee is qualified, the employer's failure to reassign isn't a failure to accommodate. *Fields v. Clifton T. Perkins Hosp.*, 605 F. App'x 200, 201 (4th Cir. 2015) (per curiam).

15

We therefore conclude that the Treasury's first offer was a reasonable accommodation. Having reached that conclusion, we reject Nguyen's final argument that the Treasury did not engage in a good-faith interactive process. "[T]he interactive process is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) (cleaned up). An employer who offers a reasonable accommodation is not, faced with a rejection, "required to extend another." *Elledge v. Lowe's Home Ctrs., LLC*, 979 F.3d 1004, 1013 (4th Cir. 2020).

## IV.

We affirm the district court's orders granting the Treasury summary judgment. And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in our decision.

*AFFIRMED*